193 N.J. Super. 629 (1984)
475 A.2d 640
JOHN J. STEINEL, PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
CITY OF JERSEY CITY, RESPONDENT-RESPONDENT AND CROSS-APPELLANT, AND CIVIL SERVICE COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 1984.
Decided February 10, 1984.
*630 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Philip Feintuch, attorney for appellant and cross-respondent (Alan S. Porwich on the brief).
*631 John C. Kennedy, Corporation Counsel, attorney for respondent and cross-appellant (Jay Hamill, Fourth Assistant Corporation Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; Gale P. Simon, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This matter is before this court on appeal and cross-appeal from a decision of the Civil Service Commission issued May 12, 1983. The facts which we set forth at some length were developed at a hearing before an administrative law judge.
Appellant John J. Steinel had been an engineering aide in the Division of Engineering of respondent City of Jersey City since January 11, 1972. Until 1978 he worked on a survey team but in that year he was transferred to an office job. In 1981 Jersey City engaged a contractor to resurface Old Bergen Road. Although appellant ordinarily did not do inspection work, he was assigned as inspector of this project because other engineering aides were either busy or on vacation. Appellant thus became responsible for ensuring compliance with the specifications for repaving as set forth in the division of engineering manual.
The project was started in September 1981 and appellant began inspecting it on September 22, 1981. Almost immediately appellant informed Joseph Slattery, his direct supervisor, that the contractor was using the wrong expansion-joint filler material for repaving. The problem, however, was not resolved as the contractor continued to use the wrong material. Appellant again informed Slattery but did not otherwise attempt to prevent the problem. Instead he waited for a person with more authority to stop it. In addition appellant failed to determine properly if the depth of the expansion joints in the concrete and the depth of the driveway drop curb and sidewalks complied *632 with the specifications. Instead of using appropriate tools to make these determinations appellant relied on inadequate visual inspections. Nevertheless, appellant believed that he was performing the necessary tests and making the required observations. Appellant submitted inspection reports detailing the progress of construction which did not indicate that the contractor was deviating from the construction specifications.
On October 21, 1981 William Globe, Director of Engineering for Jersey City, accompanied by other engineering employees, conducted an inspection of the project. This inspection revealed that improper expansion-joint material was being used, the depth of the joints in the concrete was improper and the depth of the drop curbs was improper. On October 23, 1981 Globe notified the contractor of the deficiencies which he had discovered. On October 27, 1981 Globe and other of respondent's employees discovered from a detailed inspection of the Old Bergen Road project that 120 expansion joints were of insufficient depth and that 6 driveways picked at random were also of insufficient depth.
On or about November 9, 1981 respondent filed a preliminary notice of disciplinary action with the Department of Civil Service seeking appellant's removal for neglect of duty and incompetence. Appellant was suspended on that day. Gerald Nissen, respondent's assistant director of engineering, by memorandum informed appellant that he had failed to bring to the attention of his supervisor deficiencies on the Old Bergen Road project or to record them in his daily inspection reports.
A hearing was scheduled on the charges. After several postponements, on January 12, 1982 Edward A. Flynn, respondent's assistant business administrator, conducted the hearing. He found appellant guilty of neglect of duty and incompetence. Flynn recommended that appellant's employment be terminated in light of the fact that he had six prior minor disciplinary charges sustained against him. This recommendation was adopted by Frederick J. Tomkins, respondent's business administrator, *633 who by letter dated April 12, 1982 informed appellant that he was terminated from employment effective April 16, 1982. A final notice of disciplinary action dated April 16, 1982 providing for appellant's removal effective April 16, 1982 was filed with the Department of Civil Service.
By letter dated April 19, 1982 appellant appealed to the Department of Civil Service from the action of Jersey City. The Civil Service Commission directed that a hearing be held on the appeal by the Office of Administrative Law. On January 6, 1983 George Perselay, an administrative law judge, conducted a hearing on this matter. Judge Perselay in his initial decision dated March 21, 1983, after a comprehensive review of the matter, concluded:
The appellant was not guilty of neglect of duty in failing to notify his immediate supervisor that improper joint material was being used on the project.
The appellant was guilty of neglect of duty in failing to determine properly that driveway drop curb was constructed with insufficient depth, concrete driveways were constructed of insufficient thickness and joint material was of insufficient depth.
Judge Perselay stated, however, that the penalty imposed by Jersey City was inappropriate and therefore not approved. He ordered appellant to be suspended without pay for a period of six months, effective November 9, 1981. In reaching this conclusion Judge Perselay took into account appellant's disciplinary record which included the six other incidents in which minor penalties were imposed against him. Since the six months had already passed, this decision, if implemented, would have resulted in appellant's immediate reinstatement. Judge Perselay decided that appellant was entitled to back pay for the period following the six months' suspension because there were no special circumstances or equitable considerations leading to a different result. Thus the judge concluded that back pay was warranted from May 9, 1982, the end of the six months' period of suspension, to the date of reinstatement. The award, however, was to be reduced by any income received by appellant, any benefits he received in lieu of income which he did not have *634 to repay and any income he could have earned after May 9, 1982.
On May 12, 1983 the Civil Service Commission, with the exception of the recommendation requiring back pay, accepted the judge's findings. Even though the suspension was only for six months no back pay was allowed.
On June 18, 1983 appellant filed an appeal from this determination challenging the commission's denial of back pay. Subsequently respondent filed a cross-appeal challenging the commission's order reducing appellant's penalty from termination to six months on suspension and ordering him reinstated.
We deal first with respondent's cross-appeal. Judge Perselay in his initial decision made detailed findings of fact with respect to appellant's misconduct. He then considered appellant's prior record in disciplinary matters. Ultimately he concluded:
The record bespeaks the attitude and personality of the appellant. The issue to be considered is whether it forms sufficient background to justify removal upon the finding of neglect of duty in this case.
This court is of the opinion that, under the circumstances of this case, removal is offensively excessive and harsh. What did appellant really fail to do? He failed to measure accurately the excavation depth for the concrete pouring. He made visual observations which proved to be inaccurate.
His conduct must be measured against that of his immediate supervisor. Having been told of the irregularity, the supervisor failed to perform his duty in enforcing corrective action or stopping the work. The supervisor's superior, the Chief Construction Inspector, saw no irregularities on the job site.
This is an instance where the low man on the totem pole has received the most severe penalty. Under the facts of this case, it appears to be basically unfair.
The five day suspension of October 26, 1981 involved the voluntary admission by appellant that he received a 20-dollar bill from the contractor, that he had refused it, and that it was placed in his shirt pocket and the donor walked away.
There is a great distance in the difference of moral standards involved in the conduct unbecoming a Civil Service employee offense of October 26, 1981 and the neglect of duty offense which forms the basis of this case.
Principles of progressive discipline ought to be applied. The leap from a five-day suspension to removal is just too great.
This court believes a suspension of six months would be appropriate in this case. Any offense in the future would justify removal and appellant is so warned.
*635 The reference to his immediate supervisor was to Slattery, who was also charged by respondent as a result of the Old Bergen Road problems, but received a lesser penalty in light of the fact that he had no prior disciplinary problems. The Civil Service Commission adopted the foregoing findings.
The commission's decision was a de novo determination. Henry v. Rahway State Prison, 81 N.J. 571 (1980). Thus we review the action of the commission and not that of respondent. Further since the commission's determination was de novo the question before us is not whether the commission was correct in modifying respondent's determination to terminate appellant but rather whether the commission erred in its determination that a six months' suspension was appropriate. Our scope of review on the cross-appeal is narrow. We must uphold the commission's determination unless it was arbitrary, capricious or unreasonable or it was not supported by substantial credible evidence in the record as a whole. Id. at 579-580; Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963).
Although we do not minimize appellant's offense, after a careful review of this matter we cannot say that respondent has made the requisite showing to reverse the six months' suspension. While it is true that appellant had been disciplined on six previous occasions, in none of those incidents did the suspension exceed five days. Further his conduct in this case only involved neglect of his duties; there was no intentional derogation of duty. Accordingly insofar as the Commission imposed a six months' suspension its decision is affirmed.
Appellant's appeal presents an issue of law. He contends that as a matter of law the commission erred in denying him back pay for the period after his six months' suspension. Judge Perselay held, following Belleville v. Coppla, 187 N.J. Super. 147 (App.Div. 1982), that absent special circumstances or equitable considerations appellant was entitled to mitigated back pay. The judge thought the equities favored appellant rather than respondent because respondent was responsible for *636 some delay in the proceedings and because of the more favorable treatment of Slattery by respondent. The commission disagreed with Judge Perselay on this point. It held:
The record demonstrates that appellant was guilty of neglect of duty in failing to properly measure construction. Such charges were the result of appellant's own misconduct. The Commission finds that under the circumstances of this case, the application of equitable considerations and the balancing of the interest of the employee against the public, it is fair and just that the loss of back pay be borne by appellant. See Feldman v. Toron [sic] of Irvington, 162 N.J. Super. 177 (App.Div. 1978).
There is, of course, no doubt that Feldman v. Irvington Fire Dep't, 162 N.J. Super. 177 (App.Div. 1978), cited by the commission, if still a controlling precedent would support the denial of back pay to appellant. However the precedential value of that case has been severely undermined by our more recent decisions. See Belleville v. Coppla, supra, 187 N.J. Super. at 147 and Millan v. Morris View, 177 N.J. Super. 620 (App.Div. 1981). Those cases stand for the proposition that back pay cannot be denied beyond six months even if the reinstated employee is not exonerated, as the denial of such pay would be inconsistent with N.J.S.A. 11:15-6, limiting suspensions to six months. They further hold, however, that there may be an extension of the six months' period by reason of special circumstances or equitable considerations. Such a special circumstance or equitable consideration would be a delay of the administrative proceedings dealing with his suspension caused by the employee. We now hold that the nature of the conduct giving rise to the suspension or the employee's prior disciplinary record is not a special circumstance or equitable consideration justifying denial of back pay for more than a six months' period. Rather, the nature of the conduct and the employee's prior disciplinary record are germane only as to the discipline to be imposed. We decline to follow Feldman v. Irvington Fire Dep't, supra, to the extent it is contrary to our holding.
In this case there are no equitable considerations or special circumstances justifying denial of back pay to appellant. *637 There is no indication in the record that appellant delayed the administrative hearing process on either the municipal or commission level. Indeed the record does show that at least one hearing date on the municipal level was delayed because of a scheduling conflict within respondent's law department. Accordingly the commission erred in denying appellant back pay after the six months' suspension.
We do not doubt but that the commission believed its result to be just. However we find it precluded by statute. If our result is unfair it is within the power of the Legislature to change the law so as to authorize the decision reached by the commission.
In summary, the decision of the commission dated May 12, 1983 is modified so that appellant is entitled to back pay after six months' suspension subject to reduction and mitigation for income earned or income which could have been earned after the six months' period in accordance with N.J.A.C. 4:1-5.17. The matter is remanded to the commission to redetermine the award. We do not retain jurisdiction.