197 N.J. Super. 307 (1984)
484 A.2d 1275
JUDITH CLIFF AND CLINTON A. BUDDY, RESPONDENTS AND CROSS-APPELLANTS,
v.
MORRIS COUNTY BOARD OF SOCIAL SERVICES, APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1984.
Decided December 3, 1984.
*310 Before Judges MICHELS, PETRELLA and BAIME.
Daniel W. O'Mullan, Assistant Morris County Counsel, argued the cause for appellant and cross-respondent (Armand L. D'Agostino, Morris County Counsel, attorney; Daniel W. O'Mullan, of counsel and on the brief).
Allen Hantman argued the cause for respondents and cross-appellants Judith Cliff and Clinton A. Buddy (Morris and Hantman, attorneys; Allen Hantman, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent Civil Service Commission (James J. Ciancia, Assistant Attorney General, of counsel; Gale P. Simon, Deputy Attorney General, on the statement in lieu of brief).
The opinion of the Court is delivered by MICHELS, P.J.A.D.
This is an appeal and cross-appeal from a final administrative action of the Civil Service Commission (Commission) which modified the Morris County Board of Social Services' (Morris County) removal of Judith Cliff (Cliff) and Clinton A. Buddy (Buddy) from their respective positions as Assistant Head Nurse and Institutional Attendant at Morris View Nursing Home. The Commission found Cliff and Buddy guilty of various disciplinary infractions based on their participation in an illegal strike and suspended them for six months without back pay.
The events at issue in this appeal arose from the dismissal of Cliff and Buddy, who were employed at the Morris View Nursing Home in the Township of Morris, New Jersey, following *311 a strike by a majority of the employees at that facility on August 3, 1981. On the day of the strike Morris County sought and obtained an order to show cause with temporary restraints from the Chancery Division temporarily restraining the strike. On August 7, 1981, the Chancery Division permanently enjoined the strike and activities associated therewith, except for limited picketing on the opposite side of Hanover Avenue across from the Morris View Nursing Home.
Following a prolonged investigation into the events surrounding the August 3, 1981, strike, Morris County issued preliminary notices of disciplinary action against Cliff and Buddy. Both Cliff and Buddy were charged with neglect of duty, N.J.A.C. 4:1-16.9a(1), willful violation of the provisions of the Civil Service statutes, rules and regulations or other statutes relating to the employment of public employees, N.J.A.C. 4:1-16.9a(8) and with conduct unbecoming an employee in public service, N.J.A.C. 4:1-16.9a(11). Cliff was also charged with insubordination or serious breach of discipline, N.J.A.C. 4:1-16.9a(4). On January 11, 1982, a hearing was held regarding these charges and on January 27, 1982, final notices of disciplinary action were issued to Cliff and Buddy, removing them from their respective positions at the Morris View Nursing Home, effective February 1, 1982. Morris County sustained all charges against Buddy and sustained all but the charge of "conduct unbecoming an employee in public service" against Cliff. See N.J.A.C. 4:1-16.9a(11). Accordingly, Morris County filed termination of employee's services notices with the Commission and sent copies thereof to Cliff and Buddy. Cliff and Buddy appealed Morris County's decision to the Commission.
Thereafter, between September 9, 1982, and February 10, 1983, twenty-seven days of hearings were held before an Administrative Law Judge. At the conclusion of the proofs the Administrative Law Judge granted both Cliff's and Buddy's motions to dismiss the parallel charges of striking in violation of "current and continuing contractual obligations," but sustained all remaining charges against them. See N.J.A.C. 4:1-16.9a(8). *312 The Judge recommended, however, reduction of the penalty imposed from removal to a six-month suspension with an award of back pay for the period thereafter, mitigated by any income earned by Cliff and Buddy during that period.
Cliff and Buddy and Morris County all filed exceptions with the Commission, which, after an independent evaluation of the record, accepted and adopted the findings of fact and conclusions of the Administrative Law Judge and the recommendation that Cliff's and Buddy's removal be reduced to a six-month suspension. However, the Commission refused to adopt the recommendation that Cliff and Buddy receive back pay. Morris County appealed from that portion of the Commission's determination with regard to the reduction of the penalty from removal to suspension without back pay; Cliff and Buddy cross-appealed from those portions of the determination dealing with the findings of guilt and the imposition of the penalty.
We have studied carefully the entire record in the light of the arguments presented and are satisfied that the determination of the Commission is not arbitrary, capricious or unreasonable and does not lack full support in the evidence. See Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963). Our role in reviewing the Commission's findings in a case of this kind is to determine "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering `the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility ... and ... with due regard also to the agency's expertise where such expertise is a pertinent factor." Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973), (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). See also In re Suspension of Heller, 73 N.J. 292, 309 (1977); Jackson v. Concord Company, 54 N.J. 113, 117-118 (1969). We are satisfied that such evidence appears in the record.
*313 Furthermore, it is not our function to substitute our independent judgment for that of an administrative body, such as the Commission, where there may exist a mere difference of opinion concerning the evidential persuasiveness of the relevant proofs. First Sav. & L. Assn. of E. Paterson v. Howell, 87 N.J. Super. 318, 321-322 (App.Div. 1965), certif. den. 49 N.J. 368 (1967). As a reviewing court, we will not weigh the evidence, determine the credibility of witnesses, draw inferences and conclusions from the evidence, or resolve conflicts therein. See In re Tenure Hearing of Grossman, 127 N.J. Super. 13, 23 (App.Div. 1974), certif. den. 65 N.J. 292 (1974).
We specifically reject the claims of Cliff and Buddy that the Administrative Law Judge erred by compelling them to answer not only those charges from the preliminary notices of disciplinary action sustained by Morris County in the final motion of disciplinary action but also those charges which Morris County dismissed and on which it made no findings in the disciplinary orders. Despite Cliff's and Buddy's claim the judge's ruling in this regard was not contrary to law and did not "so [cloud] the issues and evidence within the case so as to make a fair and impartial hearing impossible."
As to Cliff, the hearing officer made no finding with regard to charges 2A and 2B, alleging a violation of N.J.A.C. 4:1-16.9a(4), insubordination or serious breach of discipline, though sustaining that part of charge 2b "to the extent that the Nurse Practice Act (N.J.S.A. 45:11-23 et seq.) makes reference to the spirit in which the professional nurse is to deliver her services." As to charge 3b, alleging, pursuant to N.J.A.C. 4:1-16.9a(8), a willful violation of any of the provisions of the Commission statutes, rules or regulations or other statutes relating to the employment of public employees, the Hearing Officer decided that "an administrative hearing is an inappropriate forum in which to consider this charge." He made a similar determination with regard to charge 2b against Buddy, which also alleged a violation of N.J.A.C. 4:1-16.9a(8).
*314 Cliff and Buddy argue that N.J.S.A. 11:1-1 et seq. limits the Commission's review to charges sustained by the appointing authority. We disagree.
N.J.S.A. 11:15-4 authorizes the Commission to review the removal of classified employees by appointing authorities. That statute reads:
Within 30 days after the receipt of such notice of removal from an appointing authority, the commission may, upon its own initiative, make such investigation as it may deem advisable, and upon the appeal of the removed employee, if such appeal is received within 20 days from the date of such removal, it shall publicly inquire into and hear the person sought to be removed either sitting as a body or through 1 or more of its members.
Pursuant to such proceedings,
The commission may, when in its judgment the facts warrant it, modify or amend the penalty imposed by the appointing authority or substitute another penalty for that imposed, except that removal from the service shall not be substituted for a lesser penalty. [N.J.S.A. 11:15-6].
The Legislature has extended the protection of these sections to municipal, county and local school district employees in N.J.S.A. 11:2A-1, which states in part that "[n]o employee of the state, or of any county, municipality or school district of the state shall be ... discharged without the same right of appeal to the commission ... as in the case of removal as provided in Section 11:15-2 to 11:15-16 of the Revised Statutes." N.J.S.A. 11:2A-1; see Henry v. Rahway State Prison, 81 N.J. 571, 575 (1980). See also N.J.S.A. 11:22-38 to 11:22-39. Any appeal from the decision of a State or local appointing authority to the Commission constitutes a de novo hearing. Steinel v. Jersey City, 193 N.J. Super. 629 (App.Div. 1984), certif. granted 97 N.J. 588 (1984); Henry v. Rahway State Prison, 81 N.J. 571 (1980); Town of West York v. Bock, 38 N.J. 500 (1962). The Commission may only consider "the charges made below," West New York v. Bock, 38 N.J. 500, 522 (1962), and may not substitute removal from the service for a lesser penalty. N.J.S.A. 11:15-6.
To support their contention that the Commission may only review charges sustained by the appointing authority, Cliff and *315 Buddy cite the following language from West New York v. Bock, 38 N.J. 500 (1962), which analyzed in depth the legislative history of N.J.S.A. 11:15-6, to support their contention:
We think this legislative history, culminating in the 1946 enactment with the statement of purpose just recited, conclusively establishes that since that date the Commission has been required, on a de novo hearing on appeal from municipal action, to redetermine the penalty just as it must redetermine guilt and that this is so even where the only issue may be the propriety of the penalty imposed below. [at 519; emphasis supplied].
Cliff and Buddy argue that West New York did not say, and no court has said, that it must redetermine the guilt or innocence of a person charged in a Civil Service hearing and that if, in fact, the statute requires a redetermination of the validity of the charges as to both guilt or innocence, the Court would have said so.
However, contrary to Cliff's and Buddy's assertions, the Supreme Court, in Henry v. Rahway State Prison, 81 N.J. 571 (1980), provided the needed judicial gloss on its conclusion in Bock. Henry focused on the standard of review to be applied by the Commission in appeals de novo from decisions of the Department of Corrections and other law enforcement agencies. The Supreme Court concluded that in such appeals the Commission should apply a substituted judgment test, unrestrained by an abuse of discretion formula. The Supreme Court in Henry quoted the above language from Bock and then said:

Bock ruled that the Commission could conduct a de novo review of a disciplinary action taken by an appointing authority, make its own findings, and substitute its judgment as to guilt or innocence or as to the penalty imposed for that of the appointing authority. [81 N.J. at 576; emphasis supplied].
Thus, in reviewing the penalty imposed by the appointing authority the Commission may, contrary to Cliff's and Buddy's contentions, "substitute its judgment as to guilt or innocence." This position is further supported by the scope and nature of a de novo hearing which is that the matter is tried anew. It is as if there had been no prior hearing and as if no decision had been previously rendered. Housing Authority of Newark v. Norfolk Realty Co., 71 N.J. 314, 326 (1976). The *316 Commission has a duty in any appeal de novo from an appointing authority's determination to "seek diligently all the information and evidence bearing on the merits of the case." N.J.S.A. 11:15-5.
We therefore hold that the statute does not bind the Commission so tightly as Cliff and Buddy contend. Although the Civil Service statute, N.J.S.A. 11:1-1 et seq., vests the right of appeal from removal proceedings in the aggrieved employee, not the employer, see N.J.S.A. 11:15-4; 11:22-38 to 11:22-39, the Legislature has granted the Commission broad powers, including the right to investigate an employee's removal on its own motion, N.J.S.A. 11:15-4, and to "compel by subpoena the attendance of witnesses and the production of evidence." N.J.S.A. 11:22-39. When reassessing the penalty imposed by the appointing authority, the Commission is thus empowered, and has the duty, to consider all aspects of the case anew.
While research does not reveal any New Jersey cases which have precisely considered this issue, we considered a case with similar facts in Moorestown Tp. v. Armstrong, 89 N.J. Super. 560 (App.Div. 1965), certif. den. 47 N.J. 80 (1966) (disapproving our opinion in part on an unrelated issue). In that case we held that the Commission had acted arbitrarily when it reduced the removal of a Moorestown policeman to a six-month suspension without pay on charges including family altercations, a threat to commit suicide, a threat to kill the chief of police, a threat to abandon his home and job, misuse of firearms and numerous violations of departmental regulations. After a hearing on the matter the Township Committee sustained only nine of the ten charges. On appeal, the Commission again considered all ten charges, even though sustaining only nine. We later reversed the Commission's decision with regard to the penalty imposed, reinstating it to dismissal.
Beyond this, even if we make the dubious assumption that the Administrative Law Judge incorrectly required Cliff and Buddy to respond again to the charges contained in the *317 Preliminary Notice of Disciplinary Action, such error was harmless. Both the preliminary and final notices of disciplinary action detailed the charges and specifications against Cliff and Buddy. Moreover, in contrast to the one day hearing held before the appointing authority, the proceedings before the Administrative Law Judge lasted 27 days and afforded ample opportunity for review of the charges and for direct questioning of witnesses by the Administrative Law Judge and cross-examination of all witnesses by the parties. As quoted above, the judge's duty was to "seek diligently all the information and evidence bearing on the merits of the case." N.J.S.A. 11:15-5. And finally, and equally important, pursuant to N.J.A.C. 4:1-16.9a, a sustaining of any of the charges against Cliff and Buddy would justify the penalty imposed.
We are also convinced that the Commission did not err by denying Cliff and Buddy's back pay between the end of their six month suspension and their reinstatement even though there had not been an affirmative finding that they were responsible for the delay in process.
N.J.S.A. 40A:9-172, provides:
Whenever any municipal officer or employee shall be suspended or dismissed from his office, employment or position and such suspension or dismissal shall be judicially determined to be illegal, said officer or employee shall be entitled to recover his salary from the date of such suspension or dismissal, provided a written application therefor shall be filed with the municipal clerk within 30 days after such judicial determination.
This statute was construed by this court in Feldman v. Town of Irvington Fire Department, 162 N.J. Super. 177 (App.Div. 1978). There, we reduced the penalty of a firefighter found guilty on two departmental charges from removal to suspension without pay. Addressing the issue of whether to award back pay dating from the expiration of the suspension, we stated that:
It is our considered opinion that the statutory provision for back pay when a suspension or dismissal is found to be "illegal" (N.J.S.A. 40:46-34, now 40A:9-172 and 40A:14-23), or the application of the equitable principles inherent in the jurisdiction of the Civil Service Commission in classified service cases under *318 N.J.S.A. 11:15-6, dictate that reinstatement should be accompanied by an award of back pay only where the judicial determination finds that the charges were unwarranted on the merits. It is only the innocent victim of official power who is entitled to such reimbursement.
If, however, as in the present matter, the result of appellate determination is an affirmance of the finding of guilt of the charges, the dismissal has not been declared "illegal" because of lack of cause for the charge. The mere modification of the penalty does not per se vindicate the employee in the sense of a finding that he was wronged by the charges filed against him. It only affects the propriety of the penalty without removing the stigma of impropriety of his acts.
In the exercise of our original jurisdiction on the penalty issue our power as a court is no less than the broad discretionary power of the Civil Service Commission, namely, to deny back pay "where special circumstances justly call for such action." [Citations omitted]. We are satisfied that the special circumstances herein require the application of equitable consideration and the balancing of the interest of the employee against that of the public. [162 N.J. at 185-186].
We denied back pay, holding that the loss from delay in the process of reviewing the employee's dismissal should be borne by the employee, not the public, regardless of who caused the delay.
In Millan v. Morris View, 177 N.J. Super. 620 (App.Div. 1981), the court affirmed both the Commission's finding that an employee of Morris View was guilty of insubordination for refusing to accede to her supervisor's request and the Commission's reduction of the employee's penalty from dismissal to a six-month suspension. Again we addressed the Commission's denial of back pay, noting that between the appointing authority's decision to dismiss the employee and the Commission's reinstatement, 18 months had passed. We there observed:
The Feldman court found that "equitable considerations and the balancing of the interest of the employee against that of the public" required that the loss be borne by the employee, not the public. Id. [162 N.J. Super.] at 185-186. Whether or not we agree with that conclusion, the Commission here articulated no equitable considerations which would justify the sanction of loss of more than 18 months back pay although the suspension is limited, as required by statute, to the six month maximum. One of the equitable considerations expressed by the Feldman court in withholding back pay was the "extraordinary delay" in prosecuting the appeal. Id. at 184. Here, no consideration was given by the Commission to the cause of the delay and whether it was attributable to petitioner herself or the administrative process.
Absent a finding by the Commission based upon sufficient credible evidence in the record to support application of "equitable considerations" by way of, for *319 example, inordinate delays attributable to petitioner or mitigation, the Commission lacks authority to ignore the clear mandate of the statutory provision limiting suspension to a six-month period. [177 N.J. Super. at 624-625].
We then remanded the case to the Commission to determine whether the employee had caused the delay in process and whether the employee had taken sufficient steps toward mitigating the back pay award. Millan, 177 N.J. Super. at 625-626.
The Appellate Division has twice modified the result in Millan. First, in Belleville v. Coppla, 187 N.J. Super. 147 (App. Div. 1982), we held that in cases involving suspensions of less than six months, the Commission could deny back pay between the end of the suspension and the end of the statutory 6 month period. Second, in Steinel v. Jersey City, 193 N.J. Super. 629 (App.Div. 1984), certif. granted 97 N.J. 588 (1984), an employee appealed and the city cross-appealed from a decision by the Commission upholding the charges of neglect of duties and incompetence but reducing the employee's penalty from removal to a six month suspension without back pay, citing Feldman. We affirmed the Commission's sustaining of the charges and then addressed the back pay issue. We observed that a conflict exists between Feldman, which requires the loss of back pay to be borne by the suspended employee, and Millan, as modified by Belleville, which stands:
... for the proposition that back pay cannot be denied beyond six months even if the reinstated employee is not exonerated, as the denial of such pay would be inconsistent with N.J.S.A. 11:15-6, limiting suspensions to six months. They further hold, however, that there may be an extension of the six months' period by reason of special circumstances or equitable considerations. Such a special circumstance or equitable consideration would be a delay of the administrative proceedings dealing with his suspension caused by the employee. We now hold that the nature of the conduct giving rise to the suspension or the employee's prior disciplinary record is not a special circumstance or equitable consideration justifying denial of back pay for more than a six months' period. Rather, the nature of the conduct and the employee's prior disciplinary record are germane only as to the discipline to be imposed. We decline to follow Feldman v. Irvington Fire Dep't, supra, to the extent it is contrary to our holding. [193 N.J. Super. at 630].
We thereupon awarded back pay, finding "no equitable considerations or special circumstances justifying denial of back pay to appellant." Id.
*320 While the Supreme Court has yet to resolve the conflict between the Feldman and the Millan/Steinel line of cases, we believe that the sounder view and the one which best serves the public interest is that set forth in Feldman. We therefore follow the Feldman court and affirm the Commission's denial of back pay to Cliff and Buddy.
Finally, we are satisfied that none of the other issues of law raised by the parties has merit. R. 2:11-3(e)(1)(E).
Accordingly, the final administrative action of the Commission is affirmed substantially for the reasons expressed by President McCarthy in his written opinion issued on December 19, 1983, which opinion accepted and adopted the findings of fact, conclusions and, with the sole exception of the recommendation that back pay be granted, the recommendation contained in the thorough initial decision of Administrative Law Judge Reiner of October 7, 1983.